UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH L. CHANCE,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>   Defendant. | NO. C13-1516-TSZ-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Kenneth L. Chance appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 45 year old man with a 12th grade education. Administrative Record ("AR") at 37, 41. His past work experience includes employment as a delivery driver, electrical apprentice, flagger, and journey laborer. AR at 244. Plaintiff was last gainfully employed in October 1, 2008. AR at 18.

REPORT AND RECOMMENDATION - 1

On, April 5, 2011, plaintiff filed an application for DIB, alleging an onset date of October 1, 2008. AR at 16. On April 11, 2011, plaintiff filed a claim for SSI payments, alleging an onset date of October 1, 2008. AR at 16. At the administrative hearing, plaintiff amended the onset date to May 1, 2010. AR at 36. Plaintiff asserts that he is disabled due to depressive disorder, stress related headaches, and blurry vision. AR at 237.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 16. Plaintiff requested a hearing which took place on November 29, 2012. AR at 31-84. On January 10, 2013, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on the ALJ's finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 13-30. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On August 23, 2013, plaintiff timely filed the present action challenging the Commissioner's decision. Dkts. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Mr. Chance bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On January 10, 2013, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date.

3. The claimant has the following severe impairments: depressive disorder; antisocial personality disorder; and anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple routine tasks and some semi-skilled tasks. The claimant can have incidental and superficial public interaction.

6. The claimant is capable of performing past relevant work as a flagger, deliverer, warehouse worker, auction driver, and truck driver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2008, through the date of this decision.

AR at 18-26.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ gave legally sufficient reasons for the weight afforded to the medical opinion evidence?

2. Whether the ALJ erred by not discussing the opinion of Julie Gingerich, LICSW, a non-acceptable medical source?

3. Whether the ALJ properly assessed Mr. Chance's credibility?

Dkt. 18 at 1.

## VII.   DISCUSSION

A.   The ALJ Did Not Properly Assess All the Medical Evidence

Plaintiff argues the ALJ failed to give legally sufficient reasons for the weight afforded to five medical sources. Dkt. 18 at 1. These sources are Drs. Widlan, McDuffee, Czysz, Fligstein, and Kester. Plaintiff's arguments with respect to each are addressed below.

*1.   Standard for Evaluating Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

Here, *all* medical professionals who treated, saw, or evaluated plaintiff concluded that his impairments were much more severe than the State Agency doctors who did not see, treat, or evaluate the plaintiff. This raises serious questions as to the efficacy of the opinions of the

State Agency doctors and questions as to whether the ALJ is applying the appropriate standards in reviewing the medical evidence.

        2.     *Dr. Widlan*

On June 22, 2011, Dr. David Widlan conducted a psychological assessment of plaintiff. AR at 335-39. Dr. Widlan diagnosed plaintiff with major depressive disorder (recurrent, severe without psychotic features), pathological gambling, alcohol dependence (long term sustained remission), NOS, and headaches. AR at 338. Dr. Widlan, in his medical source statement stated:

> Kenneth suffers severe symptoms of depression as well as some characterological difficulties. The Mental Status Examination indicated adequate or moderate deficits in memory and concentration with difficulties in social reasoning. In terms of the former he was able to perform simple, repetitive commands as well as moderately complex tasks with added difficulty on the latter. As such he is cognitively able to accept instruction from a supervisor. He appears to have some deficits in social reasoning and responded poorly to a basic social scenario. He reported a tendency toward social avoidance and irritability, and he would likely have difficulty negotiating social stressors in an employment setting. His symptoms of depression, namely lack of motivation, would clearly impact absenteeism as well as persistence.

AR at 339. Dr. Widlan assessed the plaintiff a GAF score of 45.[2]

---

[2] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas." *Id.*

REPORT AND RECOMMENDATION - 8

The ALJ afforded Dr. Widlan's opinion "great weight" except for the part the impact of his depression on absenteeism and persistence. AR at 24. In finding Dr. Widlan's opinion persuasive, the ALJ indicated that although Dr. Widlan opined that the plaintiff's symptoms of depression, including lack of motivation, would impact absenteeism and persistence, the plaintiff's own testimony regarding his ability to use a computer for 12 to 24 hours at a time demonstrates that the claimant would have only mild difficulty in this regard. AR at 24. Moreover, the ALJ indicated that Dr. Widlan's opinion that the plaintiff could perform simple routine tasks and some skilled tasks, directly supports the RFC's provisions regarding the same and that Dr. Widlan's opinion that the claimant would benefit from limited public interaction supports the RFC's provision proscribing more than incidental and superficial public interaction. *Id*.

Plaintiff argues the ALJ erred in several respects. First, plaintiff argues the ALJ improperly ignored the portions of Dr. Widlan's opinion indicating plaintiff would "have difficulty negotiating social stressors in an employment setting," specifically in dealing with co-workers and supervisors, and failed to account for plaintiff's difficulty with these stressors in the RFC finding. Dkt. 18 at 3-4. Second, plaintiff argues that the ALJ failed to provide a specific and legitimate reason for rejecting Dr. Widlan's conclusion that plaintiff's symptoms of depression, namely lack of motivation, would impact plaintiff's absenteeism as well as persistence at work. *Id*. at 3-5. Third, plaintiff argues the ALJ failed to include limitations in the RFC for Dr. Widlan's determination that plaintiff has "slower than average pace." *Id*. at 5. Finally, plaintiff argues the ALJ erred in failing to provide a reason to reject Dr. Widlan's GAF score of 45. *Id*.

a.   Difficulty with Social Stressors

Dr. Widlan opined that plaintiff "reported poorly" to "a basic social scenario," and "would likely have difficulty negotiating social stressors in an employment setting." Although the ALJ purported to give "great weight" to Dr. Widlan's opinion, with one exception, the opinion and the RFC fail to address Dr. Widlan's opinion regarding plaintiff's difficulties negotiating social stressors in the work place. The Commissioner argues the difficulty in dealing with "social stressors" relates to dealing with co-workers and receiving and taking instructions from supervisors. However, it is not self-evident at all that this is what Dr. Widlan was referring to by the term "social stressors." The Court cannot conclude from the complete absence of comment by the ALJ on this issue that the Commissioner's argument is correct. The ALJ failed to discuss a critical finding in an opinion as to which great weight was attached. This requires remand.

b.   Persistence and Pace

The ALJ also erred by failing to provide specific and legitimate reasons for rejecting Dr. Widlan's conclusion that plaintiff's symptoms of depression, namely lack of motivation, would negatively impact plaintiff's absenteeism and persistence. The ALJ stated:

> Although Dr. Widlan opined that the claimant's symptoms of depression, including lack of motivation, would impact absenteeism and persistence, the claimant's own testimony regarding his ability to use a computer for 12 to 24 hours at a time demonstrates that the claimant would have only mild difficulty in this regard.

AR at 24.

Here, the ALJ gave specific but not necessarily legitimate reasons for rejecting Dr. Widlan's opinion regarding persistence and pace, because there was no evidence as to how plaintiff's ability to use a computer for extended periods of time affected his lack of motivation and absenteeism at work. *See Orn*, 495 F.3d at 639 (indicating that daily activities must be

REPORT AND RECOMMENDATION - 10

transferable to a work setting).  Moreover, nothing indicates that the use of a computer is related to plaintiff's motivation to do work or whether he would be able to attend work on a regular basis, particularly in light of the relevant work identified.

          c.        Slower Than Average Pace

The ALJ properly accounted for Dr. Widlan's findings that "Kenneth exhibited some concentration deficits . . . during the [mental status examination]" and that "[plaintiff] was generally able to maintain focus and responded with moderately slowed pace," by including, in the RFC determination, that plaintiff "can perform simple routine tasks and some semi-skilled tasks." AR at 21, 338.

It appears that Dr. Widlan thought plaintiff's "moderately slow pace" during the mental status examination meant plaintiff would have a moderate deficit in memory or concentration, which is what Dr. Widlan later described in his medical source statement.  In his medical source statement, Dr. Widlan indicated that in light of plaintiff's moderate deficits in memory or concentration during the mental status examination, plaintiff was able to perform simple, repetitive commands as well as moderately complex tasks with added difficulty on the latter. AR at 339.  The ALJ repeated this finding in the RFC determination, and accounted for plaintiff's deficits in this respect by limiting plaintiff to "simple routine tasks" and only "some semi-skilled tasks." AR at 21.  As a result, the ALJ properly accounted for Dr. Widlan's "slower than average pace" limitation.

          d.        Not Addressing GAF Score

The ALJ erred by not addressing Dr. Widlan's GAF score of 45.  While the ALJ gave "great weight" to Dr. Widlan's opinion, the ALJ failed to articulate what impact Dr. Widlan's GAF score had on plaintiff's claimed disabilities, and whether it played a role in the ALJ's determination.  Because a GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal

REPORT AND RECOMMENDATION - 11

ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job, it is highly relevant to the determination of whether plaintiff is disabled. Moreover, a review of the record indicates that almost all medical sources who examined plaintiff, consistently gave him GAF scores of 45 and below. *See* AR at 291 (assessing a GAF score of 45), 293 (assessing a GAF score of 45), 373 (assessing a GAF score of 40), 426 (assessing a GAF score of 45). In light of these consistently low GAF scores by various medical sources who examined plaintiff, the ALJ erred by not addressing how to reconcile the low GAF scores with the finding that plaintiff is not disabled, especially, when, as was true with Dr. Widlan, the ALJ gave his opinion "great weight." *See Woodsum v. Astrue*, 711 F.Supp.2d 1239, 1254-55 (W.D. Wash. 2010) (holding that in reviewing medical opinions, an ALJ cannot not simply ignore a GAF score below 45).

### 3. Dr. McDuffee

On October 18, 2011, Dr. Victoria McDuffee conducted a psychological assessment of plaintiff. AR at 372-81. Dr. McDuffee diagnosed plaintiff with polysubstance dependence, mood disorder, NOS, antisocial personality disorder, and psychosocial problems. AR at 373. Dr. McDuffee assessed the plaintiff a GAF score of 40. *Id*. Dr. McDuffee also noted that plaintiff's psychomotor behavior was normal, his behavioral style was angry, hostile, and aggressive, and his mood appeared to be angry, irritable, and depressed. *Id*. Moreover, she found that plaintiff has some issues with memory, attention, and concentration. *Id*. However, she found that when administering the Minnesota Multiphasic Personality Disorder 2 RF ("MMPD-II") test, "the results suggest he over reported his symptoms causing concerns regarding the validity of the protocol" which led her to interpret the results of the test "with caution." *Id*. at 377.

The ALJ did not adopt Dr. McDuffee's opinion, claiming that it was based primarily on "the claimant's subjective complaints and statements regarding his own functioning." AR at 25.

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting Dr. McDuffee's opinion. Dkt. 18 at 6. Specifically, plaintiff argues that while Dr. McDuffee "did conduct a clinical interview, her findings are not based on plaintiff's self-report and that the mere fact that the doctor's evaluation included a clinical interview does not suggest that she blindly accepted the claimant's account and is not a valid basis for rejecting the opinion." *Id*.

The ALJ erred in rejecting Dr. McDuffee's medical opinion. While it is true that part of Dr. McDuffee's assessments was based on statements made by plaintiff, there is no evidence that Dr. McDuffee solely relied on these statements to make her determination. Dr. McDuffee performed a variety of tests on the plaintiff including memory and concentration tests, thought processes tests, Trail Making Part A and Part B tests, and the MMPD-II test, and recorded her observations about plaintiff's mental condition based on these tests. *See* AR 376-81. Moreover, Dr. McDuffee made her clinical findings despite acknowledging that the results of the MMPD-II test may suggest plaintiff over-reported his symptoms. Thus, the evidence indicates that Dr. McDuffee did not blindly accept plaintiff's statements but combined them with her own findings. Similarly, there is nothing in the record to suggest that Dr. McDuffee relied on plaintiff's descriptions more heavily than her own clinical observations in assessing a GAF score of 40. *See Ryan v. Commissioner of Social Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008); *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999). As a result, the ALJ erred in the analysis of Dr. McDuffee's medical opinion.

*4.    Dr. Czysz*

On November 2, 2010, Dr. James Czysz conducted a psychological assessment of plaintiff. AR at 472-77. Dr. Czysz diagnosed plaintiff with depression NOS and personality disorder NOS with antisocial features. AR at 474. Plaintiff was found to have no restrictions on his ability to understand, remember, and follow simple instructions; mild restrictions on his ability to understand, remember, and follow complex instructions; moderate restrictions on his ability to learn new tasks, perform routine tasks, exercise judgment and make decisions, and care for himself; and severe restrictions on his ability to relate appropriately to co-workers and supervisors, interact with public contacts and respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR at 475. Dr. Czysz assessed plaintiff a GAF score of 45. *Id*.

The ALJ afforded Dr. Czysz's opinion "little weight," claiming that it was based "primarily on the claimant's subjective complaints and not on the objective medical evidence or the longitudinal record as a whole." AR at 24.

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Czysz's opinion. Dkt. 18 at 8. Specifically, plaintiff argues that Dr. Czysz made extensive clinical findings which were the basis of his opinion. *Id*.

The ALJ erred in rejecting Dr. Czysz's medical opinion. Dr. Czysz, in coming to his opinion, did not merely base his opinion on plaintiff's subjective complaints but rather reviewed prior evaluations of physicians, conducted a clinical interview, and administered a variety of mental status exams including the Beck depression and anxiety tests. AR at 475-76. Moreover, Dr. Czysz explained that his opinion was based on his clinical findings. For example, in explaining why he believed plaintiff had a severe limitation in the ability to relate appropriately to co-workers and supervisors Dr. Czysz stated "[t]he assigned level of severity

is based on irritability, underdeveloped social skills, etc." AR at 475.  In explaining why he believed plaintiff had a moderate limitation in the ability to learn new tasks, Dr. Czysz stated:

> The assigned level of severity is based on client's presentation in the session and client's severe score on both the BDI and BAI which were at a level that would make encoding consolidation and retrieval of new material remarkably difficult.

*Id*.  Thus, the evidence indicates that Dr. Czysz did not blindly accept plaintiff's statements but combined plaintiff's statements with his own observations and findings.  Moreover, there is nothing in the record to suggest that Dr. Czysz relied on plaintiff's descriptions more heavily than clinical observations in assessing a GAF score of 45.  *See Ryan*, 528 F.3d at 1199-1200; *Regennitter*, 166 F.3d at 1300.

### 5. Drs. Fligstein and Kester

On July 27, 2011, State Agency Medical Consultant, Dr. Diane Fligstein reviewed the medical evidence of record and prepared a mental residual functional capacity assessment of the plaintiff.  AR at 111-13.  Dr. Fligstein found plaintiff to have no significant limitations in his ability to remember work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, to perform activities within a schedule, and to sustain an ordinary routine without special supervision.  *Id*.  Plaintiff was also found to have moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentrate for extended periods, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to get

1  along with co-workers or peers without distracting them or exhibiting behavioral extremes, and
2  to respond appropriately to change in the work setting. *Id*.

3  On October 11, 2011, State Agency Medical Consultant, Dr. Eugene Kester reviewed
4  the medical evidence and prepared a mental residual functional capacity assessment of the
5  plaintiff. Dr. Kester found plaintiff to have no significant limitations in his ability to remember
6  work-like procedures, remember very short and simple instructions, carry out very short and
7  simple instructions, perform activities within a schedule, maintain regular attendance and be
8  punctual within customary tolerances, sustain an ordinary routine without special supervision,
9  make simple work-related decisions, ask simple questions or request assistance, accept
10 instructions and respond appropriately to criticism from supervisors, maintain socially
11 appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of
12 normal hazards and take appropriate precautions, and set realistic goals or make plans
13 independently of others. AR at 151-52. Plaintiff was also found to have moderate limitations
14 in his ability to carry out detailed instructions, maintain attention and concentrate for extended
15 periods, work in coordination with or in proximity to others without being distracted by them,
16 complete a normal workday or work-week without interruptions from psychologically based
17 symptoms and to perform at a consistent pace without an unreasonable number and length of
18 rest periods, interact appropriately with the general public, get along with co-workers or peers
19 without distracting them or exhibiting behavioral extremes, and respond appropriately to
20 changes in the work setting. *Id*.

21 The ALJ afforded both Drs. Fligstein's and Kester's opinions "great weight" except to
22 the extent that these opinions claimed plaintiff had moderate limitations in his ability to
23 maintain concentration, persistence, and pace, because the ALJ indicated "that finding is
24 inconsistent with the claimant's testimony at the hearing." AR at 24-25.

REPORT AND RECOMMENDATION - 16

Plaintiff argues the ALJ erred in failing to consider all of the limitations listed by Drs. Fligstein and Kester in the RFC determination. Dkt. 18 at 9. Specifically, plaintiff argues the ALJ failed to account for the plaintiff's moderate social limitation in the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and accounting for plaintiff's moderate limitation in adapting to work in the work setting. *Id*.

The ALJ did commit error by failing to include these limitations in the RFC calculation, but the error was harmless. At the hearing, the vocational expert, Deborah Lapoint, was asked whether someone with similar claimed disabilities as those of plaintiff could perform any of his past work, even "if this person needed, in addition, no interaction, no public contact, and superficial interaction with co-workers and supervisors." AR at 80. Ms. Lapoint testified that, with those limitations, a person could do work as a warehouse worker and auction driver. *Id*. Thus, despite failing to mention plaintiff's ability to deal with social stressors, specifically dealing with co-workers and supervisors and adapting to changes in the work environment in the opinion or in the RFC determination, the record indicates that the ALJ did consider these limitations, through the questioning of Ms. Lapoint at the hearing.

      B.      <u>The ALJ Erred by Not Addressing Ms. Gingerich's Opinion</u>

            1.      *Standard for Evaluating Evidence from "Other Sources"*

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his or her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* SSR 06-03p (noting that

because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill*, 12 F.3d at 919.

    2.  *Ms. Gingerich*

Ms. Julie Gingerich, LICSW, was plaintiff's social worker and treated plaintiff on several occasions since 2011. *See e.g.*, AR at 291-93, 302-03, 315, 319-20, 330, 344, 351, 361, 411, 424, 426, 434, 436, 444. In her notes, Ms. Gingerich gave opinions regarding plaintiff's conditions. For example, on October 31, 2012, Ms. Gingerich wrote a mental health evaluation about plaintiff's functioning stating:

> [Plaintiff's] low mood, low energy and amotivation have been persistent barriers to launching a sustained job search. His anticipation that he will be rejected by potential employers negatively impacts his motivation. Irritability and his difficulty in tolerating interpersonal interactions has been another barrier. He has tended to avoid social interactions as he does not trust his ability to interact appropriately with the general public due to his past history of violent behavior. He would be unlikely to request assistance or to accept instructions to respond appropriately to criticism from supervisors. Cautious about overextending himself, he has declined increased structure in his mental health program as he has a past history of not fulfilling requirements.

AR at 458. Moreover Ms. Gingerich repeatedly assessed plaintiff with a GAF score of 45. AR at 291, 293, 426.

  The ALJ erred by failing to discuss Ms. Gingerich's opinion. Because of Ms. Gingerich's extensive interactions with plaintiff, the amount of time she spent evaluating plaintiff's mental state, and the extensive amounts of notes she provided in the record, the ALJ

REPORT AND RECOMMENDATION - 18

cannot disregard Ms. Gingerich's opinion without comment.  *See Dodrill*, 12 F.3d at 918-19; SSR 06-03p.

### C. Mr. Chance's Credibility

The ALJ erred in determining plaintiff was less than credible.  While the ALJ discredited plaintiff based on plaintiff's perceived inconsistent statements concerning the intensity, persistence, and limiting effects of his symptoms; his daily activities; and medical evidence indicating plaintiff's condition was improving while he was on medication, he failed to address how these inconsistencies affect plaintiff's ability to work or why they should be used to discredit plaintiff.  For example, the ALJ discredited plaintiff based on his gambling, but fails to indicate how his ability to gamble transfers to a work setting or otherwise impacts his credibility.  Similarly, the ALJ discounted plaintiff's credibility, in part, because he found that plaintiff's daily living activities, such as attending social events with his girlfriend were inconsistent with his claimed disabilities and his ability to work.  AR at 20-22.  The ALJ must establish how the daily activities translate to a work setting.  *See Orn*, 495 F.3d at 639 (indicating that daily activities must be transferable to a work setting).  The ALJ did not do so.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  The ALJ is instructed to re-evaluate Drs. Widlan's, McDuffee's, and Czysz's opinions, address Ms. Gingerich's opinion, and re-evaluate plaintiff's credibility in light of these assessments.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **June 20, 2014**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be

noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 27, 2014**.

DATED this 6th day of June, 2014.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20